## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

MILLICENT SIFUNA,           )
                                     )
       **Plaintiff,**       )
                                     )
v.                                )  No.  3:14-cv-00515
                                   )     **REEVES/SHIRLEY**
SOUTH COLLEGE OF TENNESSEE, INC.,   )
                                     )
       **Defendant.**     )

## MEMORANDUM OPINION

In this action, plaintiff claims breach of an express or implied contract and promissory estoppel following her academic dismissal from South College's School of Pharmacy. Currently pending before the court is defendant's motion for summary judgment [R. 19], to which plaintiff has responded [R. 43]. The court has carefully considered the pending motion, plaintiff's response, and the supporting exhibits in light of the applicable law. For the reasons stated herein, the court finds defendant's motion for summary judgment well-taken, and the motion will be granted.

## I.  Factual Background

South College is a private, co-educational institution offering an accelerated three (3) year program for a Doctor of Pharmacy degree. Sifuna attended South College between February 2012 and her academic dismissal in December 2013.

South College has an Experiential Education Program that requires students to take and pass a number of clinical rotations at pharmacies and medical institutions under the supervision of instructors and licensed pharmacists who are referred to as "preceptors." Students must take and pass a certain number of clinical rotation courses in order to obtain their Doctor of Pharmacy Degree. The clinical rotations also serve as "contact hours" required for licensure by the Tennessee Board of Pharmacy, so the courses are essential both for obtaining a degree and a license to practice pharmacy.

The Student Handbook emphasizes professionalism as a core competency for student pharmacists. The Class Conduct policy states that students are expected to conduct themselves at all times in a professional and responsible manner. The Experiential Education Handbook for clinical rotations contains provisions requiring professional conduct by student pharmacists, including "Attendance and being on time are hallmarks of professionalism. If a student anticipates being late for a rotation, it is the student's responsibility to contact the preceptor." Attendance at all scheduled clinical rotations is mandatory; and "student pharmacists are responsible for being at sites and ready for activities they may be responsible for in a regular and timely manner and ready to begin on time." Students who engage in practices, attitudes or characteristics deemed unprofessional by faculty may be subject to disciplinary review.

Sifuna had successfully completed three of four required clinical rotations. In August 2012, Kellie Goza, Director for clinical rotations, emailed Sifuna's class to schedule a clinical rotation for 2013. The rotations were for one week consisting of five days, eight hours per day. Students were given three weeks from which to choose – Sifuna

chose the week of September 16-20, 2013. That was the last week the clinical rotation was offered during the second year of the curriculum. The Experiential Education Handbook for clinical rotations states it is the responsibility of the student to contact the preceptor by phone or email within ten working days of the start of a rotation. The purpose of the contact is to make an introduction to the preceptor, obtain specifics of the site location, parking, hours, and establish the first day of the rotation. Sifuna did not communicate with her preceptor, Dr. Long, in advance of the start of the rotation.

Sifuna failed to report for the start of her rotation at City Drug on September 16 and at 11:45, Dr. Long left a voicemail message for Goza. When Goza returned Dr. Long's call, he told her that Sifuna did not show up to start the rotation and did not contact him in advance. He further told Goza that Sifuna called him around 11:45 a.m. and stated that she arrived at 8:00 a.m., but the store was "closed," and the sign said they did not open until 9:00 a.m. Sifuna told Dr. Long that she went to Maryville College, got lost, could not find her way back to City Drug, and decided to go home. Goza told Dr. Long that he was free to make his own decision about what he wanted to do with Sifuna. Dr. Long told Goza that Sifuna could not return to City Drug.

Sifuna went to Goza's office at approximately 4:00 p.m. on September 16. Sifuna claimed she did not have the correct telephone number for Dr. Long. She admitted that she did not contact Dr. Long prior to her rotation because "she was familiar with City Drug." She claimed that Dr. Long told her she could come on Tuesday, September 17 to start her rotation. Goza informed Sifuna that Dr. Long had found Sifuna's behavior unacceptable and she would not be permitted to do her rotation at City Drug. Goza advised Sifuna to

contact Dr. Long that afternoon to apologize for her lack of communication and ask if he would permit her to complete the rotation with him at City Drug. Goza further advised that if Dr. Long did not permit her to complete the rotation at this time, the only other option would be to complete a rotation the week of December 16-20, 2013, with another preceptor.

Sifuna did not contact Dr. Long that afternoon as directed. Goza called Dr. Long at 5:00 p.m. to ask if Sifuna had made contact with him. Dr. Long reported that he had not heard from her and reiterated that at this point she would not be permitted to return in light of her unprofessional conduct. In Dr. Long's view, Sifuna's conduct in failing to contact him to make arrangements to start the rotation, failing to show up to start the rotation, claiming that she had been there but left and became lost within a half a mile from the store, and then deciding to go home, constituted unprofessional conduct, which he deemed unacceptable.

The next morning, Dr. Long testified that Sifuna appeared at City Drug at 8:00 a.m. He was behind the counter. Because Sifuna did not approach the counter or say anything, Dr. Long approached her and asked if there was anything he could help her with. Sifuna said, "I'm here for the rotation." Dr. Long informed Sifuna that she would not be doing her rotation at City Drug. Sifuna said "okay" and turned and left.

Sifuna states that at least one month before the scheduled rotation, she sent an email to Dr. Long advising him that she was supposed to have a rotation at his pharmacy September 16-20, and asking him if there was anything that she needed to know. When Dr. Long did not respond to her email, Sifuna attempted to call him about a week before

4

September 16, but no one answered the call. Sifuna then researched City Drug online and found that the pharmacy opened at 8:00 a.m.

On September 16, 2013, Sifuna drove to City Drug, which is located on Lamar Alexander Parkway. She arrived prior to 8:00 a.m. When she pulled into the parking lot, she noticed a sign on a door of the building that said it was closed and was open from 9:00 a.m. to 6:00 p.m. The door also had a sign on it that said "City Drug Home Medical Equipment." Sifuna became confused and wondered if she was at the right place. After sitting in the parking lot for a few minutes, a truck drove by that had a bumper sticker on it that said "If I had known it would come to this, I would have picked my own cotton." That made Sifuna uncomfortable, so she decided to go to Maryville College which is also on Lamar Alexander Parkway.

Siguna went to the library at Maryville College and tried to call City Drug, but got no answer. She left the college intending to return to City Drug, but got lost. She returned to the library at Maryville College and used Mapquest to get directions to City Drug. Sifuna got lost again, so she found the interstate back to Knoxville. When she got back to Knoxville, Sifuna called Dr. Long around 10:45 a.m. She explained what had happened and asked if she could return the following day to start her rotation and Dr. Long said that would be okay. Sifuna returned to City Drug the next day and arrived a few minutes before 8:00 a.m. At that point, she figured out she should have gone to another door a few feet away from the one she went to the previous day. Sifuna had gone to the medical equipment business door, which opened at 9:00 a.m., and the other door was for the pharmacy, which opened at 8:00 a.m. When Sifuna went to the pharmacy door on the morning of September

17, Dr. Long was stepping out to get the newspaper. When Sifuna told him who she was, Dr. Long told her that she would not be doing her rotation there and went back into the pharmacy. Sifuna testified that after Dr. Long declined to let her start the rotation on September 17, she "went on vacation" to Nashville because she was "stressed out." She did not further contact Goza to arrange a substitute rotation for the week.

Because Sifuna did not complete the clinical rotation at City Drug, Dr. Long never gave Sifuna any type of evaluation or grade, thus, Dr. Freeman, as course director, assigned her an "F". Dr. Freeman notified Dr. Hussein, Associate Dean of Academic Affairs, that although she had sent two emails, she had received no communication from Sifuna. On September 23, Sifuna finally responded to Dr. Freeman asking if she could do a make-up rotation over Thanksgiving break. Dr. Freeman replied that she did not have any preceptors available and told Sifuna that she could complete the rotation December 16-20, 2013. Sifuna requested that she not return to City Drug "because the experience from that particular store/community would not be very helpful to my goals and where I plan to use my education."

On October 15, 2013, Sifuna emailed Dr. Hussein telling him she was uncomfortable going to Maryville. She wished to make up her rotation November 16-20, and she would find her own location. Sifuna also stated she was going to be in London for a sibling's wedding during December 16-20. Dr. Hussein directed Sifuna to contact Dr. Freeman to make up the rotation. He further informed Sifuna that her failure to complete

the rotation would result in dismissal from the program. By October 28, 2013, Sifuna had done nothing to address her issues related to the failed clinical rotation with Dr. Freeman.

Dr. Freeman contacted Sifuna on November 20, 2013, asking her to meet to discuss rescheduling the clinical rotation. Because of Sifuna's complaint about "being uncomfortable" at City Drug, wanting a pharmacy that "fit her goals," and her representation that she was going to be out of the country the week of December 16-20, Dr. Freeman want to meet with Sifuna to see if she intended to do the clinical rotation in December, to give her a choice of locations, to hear her explanation of what occurred with Dr. Long, and to go over professionalism issues. Sifuna testified that she went by Dr. Freeman's office, but she was not in the office, and Sifuna never met with her. Dr. Freeman had posted office hours (Tuesday 1-3 and Thursday 1-3) and encouraged students to make appointments to see her. Sifuna never made any effort to schedule an appointment with Dr. Freeman. Instead, she sent an email to Dr. Freeman proposing that she do a rotation with Dr. German at Preferred Pharmacy the week of Thanksgiving.

South College states there were at least three problems with Sifuna's proposal. First, Goza had already told Sifuna in October 2012, that she could not do two clinical rotations with the same preceptor (Sifuna had previously completed a rotation with Dr. German). Second, the Experiential Education Handbook clearly states, "It is inappropriate for a student pharmacist to contact a preceptor or clinical faculty member directly at an affiliate practice site to attempt to arrange or change a rotation." Third, Dr. Freeman and Goza

determine the times for clinical rotations well in advance; they did not allow students to set up their own rotations or try to change designated rotation times to suit their own schedules.

On November 20, 2013, Dr. Freeman responded to Sifuna that a rotation with Dr. German the week of Thanksgiving was not an option, and she would need to make up the clinical rotation the week of December 16-20, 2013. Sifuna replied on November 21, requesting that she not be sent to "uncomfortable areas. How comfortable would you be in a parking lot whose cars have stickers like 'If I'd known it would come to this, I would have picked my own cotton?'" Sifuna ended her email with "Those who will not reason, are bigots, those who cannot, are fools, and those who dare not, are slaves. – George Gordon Bryon."

Dr. Freeman believed Sifuna was directing the terms "bigot" and "fool" to her for declining Sifuna's proposal to make up the failed clinical rotation. Dr. Freeman responded, "Your comments are inappropriate. I will not communicate with you any further." Dr. Freeman then forwarded Sifuna's email to Dr. Fitzgerald, saying "I will not tolerate being called a bigot and a fool. This crosses the professionalism line." Dr. Freeman made no further efforts to contact Sifuna.

Under South College's curriculum, students may not progress from one quarter to the next unless the student has met the requirements for progression. A minimum letter grade of "C" in any course and a cumulative grade point average of 2.33 are required for advancement to the following academic quarter. Under the academic progression policy, Sifuna's "F" resulted in automatic dismissal in December 2013. Once grades are posted, a student who does not meet the minimum requirements for progression is academically

dismissed from the program and an immediate petition for readmission must be initiated by the student to the Associate Dean for Academic Affairs. Sifuna appealed to the Academic Standing and Progression Committee, and a hearing was scheduled for December 12, 2013. Sifuna failed to appear, claiming that she was having "car trouble." The Committee rescheduled the hearing to December 13, 2013, at which time Sifuna appeared and asked the Committee to set aside the "F." The Committee voted to reject her grievance and recommended to the Dean of the School of Pharmacy that the "F" be upheld.

On December 17, 2013, Dr. Fitzgerald wrote Sifuna, notifying her of the Committee's recommendation that her grievance be denied. He confirmed that pursuant to the Student Handbook, a grade of "F" in any course was grounds for academic dismissal. He informed Sifuna she had two options – she could appeal the decision to the South College Executive Vice President, Dr. Hall, or she could file a petition for readmission in lieu of an appeal to Dr. Hall. On December 30, 2013, Sifuna emailed Dr. Freeman apologizing for her "inappropriate behavior."

On January 21, 2014, Sifuna filed a petition for readmission. The petition was referred to the Academic Standing and Progression Committee for consideration, and the Committee conducted a hearing on January 22, 2014. Upon conclusion of the hearing, the Committee voted unanimously to deny readmission, and made that recommendation to Dr. Fitzgerald. Dr. Fitzgerald advised Sifuna of the Committee's recommendation, and informed her of his decision to uphold the recommendation based upon Sifuna's unprofessional conduct. Sifuna appealed the decision to Executive Vice President, Dr.

Hall, and President, Stephen South. They met with Sifuna on February 27, 2014. By letter dated March 6, 2014, Sifuna was notified that her appeal was denied.

South College moves to dismiss plaintiff's claims on the grounds that plaintiff is unable to establish (1) that South College breached a contract, express or implied, by assigning Sifuna an "F" in the clinical rotation; and (2) the essential elements of a claim of promissory estoppel.

Sifuna concedes that her dismissal from the School of Pharmacy was automatic once she was assigned a failing grade. Nor does she assert a claim for wrongdoing associated with the college's handling of her petition for readmission. Sifuna also abandons her claim for breach of the handbook provision addressing the procedure for making up a course in which a student has already received a failing grade, as well as her claim for equitable estoppel. Sifuna continues to assert claims arising out of the college's refusal to allow her to make up her "absence" during the clinical rotation and the assignment of an "F" for the course. Sifuna argues the college breached the provisions in its Experiential Education Handbook by not allowing her to make up her absence from the first day of the clinical rotation and assigning her a failing grade in the course. Therefore, Sifuna argues, South College's motion for summary judgment should be denied.

## II.   Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v.*

*Cattrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Co., Inc.,* 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Keifer*, 301 F.3d 937, 942 (6th Cir. 2002).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

# III. Analysis

## A. Breach of Contract

Sifuna asserts that South College breached the contractual relationship established by the Experiential Education Handbook by (1) not allowing her to make up her absence from the first day of the clinical rotation or reassigning her to another site, and (2) assigning an "F" in the class. Additionally, Sifuna claims that Dr. Freeman's September 17, 2013 and November 20, 2013 emails constituted contracts, which she claims South College breached by failing to allow her to complete a make-up rotation. Finally, Sifuna claims that Goza's oral representations at a meeting on September 16, 2013, constituted a contract which South College breached by not allowing her to make up the failed clinical rotation as promised.

In Tennessee, a plaintiff alleging a breach of contract must show (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) money damages caused by the breach. *Thomas v. Meharry Med. College*, 1 F.Supp.3d 816, 828 (M.D.Tenn. 2014). The Sixth Circuit, applying Tennessee law, has stated that "the student-university relationship is contractual in nature although courts have rejected a rigid application of contract law in this area." *Atria v. Vanderbilt Univ.*, 142 Fed. Appx. 246, 255 (6th Cir. 2005). Catalogs, manuals, handbooks, bulletins, circulars and regulations of a university may help define the contractual relationship. *Id.* Courts have adopted different standards of review when educators' decisions are based upon disciplinary versus academic criteria, applying a more intrusive analysis of the former and a far more deferential examination of the latter. *Doherty v. S. Coll. Of Optometry*, 862 F.2d

570, 577 (6th Cir. 1988). Generally, a court should not disturb a university's academic decisions unless the university acted in an arbitrary and capricious manner. In order to establish such arbitrary and capricious action, a plaintiff must show that there is no rational basis for the university's decision or that the decision was motivated by bad faith or ill will unrelated to academic performance. *Stevens v. Hunt*, 646 F.2d 1168, 1169 (6th Cir. 1981). Judicial intervention in any form should be undertaken only with the greatest reluctance. "This is the case especially regarding degree requirements in the health care field when the conferral of a degree places the school's imprimatur upon the student as qualified to pursue his chosen profession." *Doherty v. S. Coll. Of Optometry*, 862 F.2d at 576. Judicial deference to educators in their decisions is no less applicable in a clinical setting because evaluation in a clinical course involves observation of skills and techniques in actual conditions of practice. *Id.*

South College asserts that its decisions to assign Sifuna an "F" for the clinical rotation, dismiss her from the program, and decline to readmit her, are all academic decisions entitled to deference, which may be overturned only if they were arbitrary and capricious.

## 1. "F" Grade

Dr. Freeman's assignment of an "F" to Sifuna for the clinical rotation was clearly an academic decision. The Experiential Education Handbook requires students to contact their preceptor by phone or email within ten working days of the start of a rotation to obtain the specifics of the site location, parking, hours, and to establish the first day of the rotation. Sifuna never spoke to Dr. Long prior to her rotation; she did not show up for the first day

13

of her rotation; and Dr. Long decided that he would not allow her to complete the rotation due to her unprofessional conduct. Sifuna failed to complete the 40 hours required to receive credit for the clinical rotation. The clinical rotations were graded as either Pass or Fail. Because Sifuna did not complete the clinical rotation requirements, Dr. Freeman was justified in assigning her a grade of "F".

In her arguments, Sifuna ignores the provisions of the Experiential Education Handbook stating that "professionalism is a core competency component" of the clinical rotation and part of the grading. Her unprofessional conduct went far beyond a mere absence. She also ignores the grading procedure outlined in the School of Pharmacy Handbook stating, "Please be reminded that a failure of any pharmacy practice experience can occur solely based on the lack of professionalism at the sole discretion of the preceptor." It is undisputed that Goza emailed Sifuna accurate contact information for Dr. Long on March 1, 2013, and his contact information was also available in E*Value. Dr. Long testified that he was not contacted at any time in advance by Sifuna by email, phone call, or in person as she was required to do. The Experiential Education Handbook states that is the student's responsibility to contact the preceptor in advance. Sifuna cannot rely on provisions of the attendance policy, taken out of context, where she committed multiple breaches of her own responsibilities under the college's policies which led to Dr. Long's decision to decline to allow her to complete the clinical rotation due to her unprofessionalism. Sifuna's testimony that she sent an email she has not produced, and that she thinks she made a phone call but no one answered, does not create a dispute of

material fact given Dr. Long's testimony that he received no email or phone call from Sifuna prior to September 16, 2013.

### 2.  Failure to Schedule Another Clinical Rotation

Sifuna argues South College did not comply with the provisions of the Experiential Education Handbook that she asserts allow her to make up the clinical rotation.  The Handbook provides that "A failed IPPE must be made up with a passing grade in order to progress to Advanced Pharmacy Practice Experiences."  South College responds that this provision must be read in the context of other policies – the Student Handbook lays out the Academic Progression policy and requires a letter grade of "C" or better for advancement to the following academic quarter.  Because she received an "F", Sifuna could not advance to the following academic quarter.  Moreover, a grade of "F" in any course, results in automatic academic dismissal per the Academic Progression Policy.

Under the South College policies, the make-up provisions that Sifuna is relying on would be applicable if the Academic Standing and Progression Committee overturned the "F".  Only then would Sifuna have been allowed to make up the clinical rotation during the week of December 16-20, 2013.  Because the Committee upheld the "F" grade, Sifuna was not eligible to make up the clinical rotation.

Next, Sifuna argues South College breached it attendance policy that allows a student who has an unexpected absence to make up the hours prior to the end of the grading period for the rotation.  South College responds that this provision allows a student to make up hours "in a way that meets with the preceptor's approval."  Therefore, a student can only make up an absence if she continues to work for the preceptor, and she makes up the

absence in a way that meets the preceptor's approval. Here, Dr. Long decided that he would not allow Sifuna to do the rotation based on her lack of professionalism. While Sifuna's no-show on September 16 may be considered an "absence," that is only part of the reason Dr. Long refused to allow her to complete the clinical rotation. Dr. Long testified that the first time he heard from Sifuna was at 11:30 a.m., when she was due at City Drug at 8:00 a.m. She told him that she had come to City Drug but they "weren't open at 8:00 a.m." Since nobody was there, she went to Maryville College and then got lost when she tried to return to City Drug, so she went home.

Dr. Long testified that he was disappointed at Sifuna's unprofessional conduct in failing to contact him in advance as well as her excuses. He testified that he found it hard to believe that if Sifuna was there that morning, she only saw the entrance to City Drug Home Equipment and did not see the entrance to City Drug which is only a few feet away. He further testified that he also found it hard to believe that person could get "mixed up and lost" between Maryville College and City Drug since they are on the same street and only a short distance apart. Dr. Long also testified that he did not tell Sifuna she could start the next day. When Dr. Long talked with Goza that morning, she told him he was free to decide how to handle the situation. Dr. Long decided to not continue with the rotation in light of Sifuna's unprofessional behavior. Sifuna's conduct went well beyond a mere absence, and it violated the Experiential Education Handbook's professionalism requirement. Accordingly, the court finds that Sifuna cannot prevail on her claim that South College breached the attendance policy as a matter of law.

Sifuna next argues that South College was obligated to reassign her to another rotation site. Sifuna relies upon provisions in the Experiential Education Handbook reserving to the school the right to reassign a student to a specific site. The provisions do not obligate the school to reassign a student who willingly fails to complete an assigned rotation. Sifuna did not pursue a reassignment immediately after Dr. Long declined to allow her to do the rotation at City Drug on September 17, instead, she took a vacation. Sifuna did not respond to Dr. Freeman's communication until September 23. By that time, the September rotations were concluded. Sifuna was told that no preceptors were available for November, but she could do a rotation December 16-20. Yet, Sifuna did not take advantage of Dr. Freeman's offer to meet to arrange for a rotation in December. And, as explained above, Sifuna could not do two clinical rotations with the same preceptor. There is no question here that South College did everything possible to schedule another rotation for Sifuna. Sifuna simply failed to take advantage of the opportunities offered to her.

Sifuna argues that South College's decision to award her an "F" was a disciplinary decision requiring a close examination by the court, not an academic decision. Sifuna is wrong. As noted above, South College has established professionalism as a core competency component of the clinical rotation assessments and a part of grading. Thus, Dr. Long's decision to decline to allow Sifuna to complete the clinical rotation due to her unprofessional conduct was an academic decision. Additionally, Dr. Freeman's decision to give Sifuna an "F" because she did not complete the rotation is also an academic decision. *See Al-Dabagh v. Case Western Reserve Univ.*, 777 F.3d 355 (6th Cir. 2015) (dismissal on professionalism grounds amounts to a deference-receiving academic

judgment); *see also Harris v. Blake*, 798 F.2d 419, 423 (10th Cir. 1986) (dismissing student for failing to attend practical class sessions is "academic"). Sifuna has cited no authority to the contrary. Therefore, in order to show that the college's decision to give her an "F" was arbitrary or capricious, Sifuna must show there was no rational basis for the decision, or that the decision was motivated by bad faith or ill will unrelated to academic performance. *Stevens*, 646 F.2d at 1169. Sifuna has presented no evidence to show that South College acted without a rational basis for its decision, or that the decision was motivated by bad faith or ill will towards her. Pursuant to the controlling authority, the decision of South College was academic and entitled to deference by the court. District courts are instructed, when reviewing the substance of academic decisions "to show great respect" for the faculty's professional judgment, and "only reluctantly intervene in academic decisions." *Kaltenberger v. Ohio College of Podiatric Medicine*, 162 F.3d 432, 437 (6th Cir. 1998).

### 3.  Representations of Dr. Freeman and Goza

Sifuna claims that she had a contract to complete her rotation in December 2013 based on Dr. Freeman's emails dated November 20, 2013, and September 17, 2013, and Goza's oral representations made on September 16, 2013. Dr. Freeman's November 20, 2013 email states:

> You will have to complete the IPPE at the next scheduled time of December 16-20, 2013. The Office of Experiential Education will make the assignment with a preceptor in which we already have availability for this scheduled timeframe.

Assuming, *arguendo,* that the email is an offer to contract, an offer requires acceptance to form a binding contract. Rejection by the offeree terminates the power of acceptance. *Vraney v. Medical Spec. Clinic*, 2013 WL 4806902 at *19 (Tenn.Ct.App. Sept. 9, 2013). Sifuna's response to Dr. Freeman does not accept a December rotation, but instead proposes a counteroffer – that she be allowed to do a rotation with Dr. German the week of Thanksgiving. Therefore, when Sifuna made her counteroffer, the effect was a rejection of the offer made by Dr. Freeman to complete a rotation in December. There was no contract formed between Dr. Freeman and Sifuna based on the November 20, 2013 email.

Second, Sifuna also claims that an email sent to her from Dr. Freeman on or about September 17, 2013, allegedly stating she would be able to complete the IPPE in December of 2013, constituted a contract. Neither Sifuna nor South College have produced this email. Dr. Freeman did send an email to Sifuna on September 23, 2013, stating that she did not have any preceptors for the Thanksgiving week, and the next opportunity to complete the rotation would be December 16-20, 2013. But again, to constitute a contract, Sifuna would have to accept the offer to do a rotation in December. Sifuna did respond to Dr. Freeman, thanking her for her email, and requesting that she not return to Dr. Long's Maryville store. Nowhere in her response does Sifuna agree to schedule a make-up rotation in December.

Finally, Sifuna also claims that Goza's oral representation on September 16, 2013, constituted a contract with her. Specifically, Sifuna asserts that Goza represented and assured her that she would be allowed to make up the IPPE in December 2013. However, Sifuna fails to provide any evidence that she accepted the purported offer. Sifuna has

presented no evidence upon which a jury could find the essential elements of a contract – offer and acceptance. Accordingly, no contract existed, as a matter of law, based on these communications.

## B. Promissory Estoppel

Sifuna claims South College made promises in its Handbook, in emails, and verbally about the procedures that would be followed at the School of Pharmacy and Sifuna relied on these promises. These promises induced her to enroll in the School of Pharmacy, to pay tuition and other fees to South College, and to attend classes at South College.

To establish a claim of promissory estoppel, a plaintiff must demonstrate that (1) a party made a promise which the promisor should reasonably have expected to induce the action or forbearance of the promisee; (2) the promise does induce such action or forbearance; and (3) injustice can be avoided only by enforcement of the promise. *Atria Univ.*, 142 Fed. Appx. at 256. Promissory estoppel is not applicable if the promisee did not act reasonably in justifiable reliance on the promise as made. *Alden v. Presley*, 637 S.W.2d 862, 864 (Tenn. 1982). Moreover, the promise upon which the promisee relied must be unambiguous and not unenforceably vague. *Id.* Tennessee law limits application of the doctrine to exceptional cases such as where the defendant's conduct is "akin to fraud." *Sparton Tech. Inc. v. Util-Link, LLC*, 248 Fed. Appx. 684, 689 (6th Cir. 2007).

Here, Sifuna fails to identify an unambiguous promise that reasonably induced her to enroll and attend classes at South College. There was no breach of any promise to Sifuna, and certainly no evidence to support a claim of fraud. Accordingly, her claim of promissory estoppel fails as a matter of law.

## IV.  Conclusion

In light of the foregoing discussion, the court finds South College's motion for summary judgment [R. 19] well-taken; the motion is **GRANTED;** and this action is **DISMISSED with prejudice.**

_____
**UNITED STATES DISTRICT JUDGE**